**UNITED STATES, Appellee,**

v.

**Specialist Hector RODRIGUEZ, United States Army, Appellant.**

**ARMY 9700189.**

U.S. Army Court of Criminal Appeals.

30 Oct. 1998.

For Appellant: Captain Donald P. Chisholm, JA (argued); Colonel John T. Phelps II, JA; Lieutenant Colonel Michael L. Walters, JA; Major Holly S.G. Coffey, JA; Captain T. Michael Guiffre, JA (on brief); Colonel John T. Phelps II, JA; Lieutenant Colonel Adele H. Odegard, JA; Major Holly S.G. Coffey, JA; Captain T. Michael Guiffre, JA (on reply brief).

For Appellee: Captain Arthur J. Coulter, Jr., JA (argued); Colonel Russell S. Estey, JA; Major Patricia A. Ham, JA (on brief).

Before TOOMEY, Senior Judge, CARTER and NOVAK, Appellate Military Judges.

## OPINION OF THE COURT

CARTER, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of intentionally inflicting an injury upon himself in a hostile fire pay zone, without intent to avoid service, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for 354 days, forfeiture of all pay and allowances, and reduction to Private E1. This case is before the court for automatic review under Article 66, UCMJ.

The issue presented is whether the psychotherapist-patient privilege recognized by the United States Supreme Court in *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), as being part of the federal common law, is applicable to trials by courts-martial. For the reasons discussed herein, our answer is no. We hold that a federal common law psychotherapist-patient privilege, without specifically tailored parameters and exceptions necessary in a military environment, is not "practicable" in trials by court-martial. UCMJ art. 36(a) and Military Rule of Evidence 501(a)(4) [hereinafter Mil. R.Evid.], MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.) [hereinafter MCM]. We also hold that even if a general, unrestricted *Jaffee* privilege were practicable in the military, it is still "contrary to or inconsistent with" the language of Mil.R.Evid.

501(d) as applied to a psychiatrist employed by the military.

## Facts

Appellant deployed with his unit to Bosnia in support of Operation Joint Endeavor. In the spring of 1996, appellant's wife told him during a telephone conversation that she wanted a divorce. Appellant asked for and was denied leave to visit his wife in Germany to reconcile their marriage.[1] Appellant's chain of command, his chaplain, and a combat stress evaluation team held numerous counseling sessions with appellant, including psychiatric counseling.[2]

On 2 May 1996, appellant wrote two "suicide letters," one addressed to his command and one to his wife. Appellant also prepared an audio tape recording for his wife. Appellant then went to an empty bunker, loaded one round into his M249 squad automatic weapon, tied a cord to the trigger, and propped the weapon up facing him, preparing to shoot himself. The weapon subsequently discharged, shooting appellant in the abdomen.

Appellant was evacuated to Landstuhl Regional Medical Center in Germany for medical treatment. During this medical treatment, appellant spoke with Dr. Alfano, a psychiatrist and GS–13 federal civilian physician. Appellant told Dr. Alfano that he wanted to cause some injury to himself but did not realize that it would be so serious. Appellant also stated that he wanted to go home to his wife and straighten things out with her.

At trial, appellant's defense was that at the last minute he abandoned his attempt to shoot himself but that the weapon accidentally fired while he was retrieving it. Appellant's defense counsel challenged the ad-

missibility of appellant's statements to Dr. Alfano claiming they were protected by the federal psychotherapist-patient privilege recognized in *Jaffee v. Redmond*. The military judge ruled that under Mil.R.Evid. 501 and Article 36, UCMJ, the federal psychotherapist-patient privilege is not applicable in the military, at least for a military psychiatrist.

### Jaffee v. Redmond

Unlike the Military Rules of Evidence, the Federal Rules of Evidence [hereinafter Fed.R.Evid.] enumerate no specific privileges. Instead, Fed.R.Evid. 501,[3] a general privilege rule, "authorizes federal courts to define new privileges by interpreting 'common law principles ... in the light of reason and experience.'" *Jaffee*, 518 U.S. at 11, 116 S.Ct. at 1927. Using this authority, the Supreme Court held that confidential communications made between a licensed psychiatrist or psychologist and a patient, in the course of that patient's diagnosis or treatment, are protected from compelled disclosure under Fed.R.Evid. 501. The Court also extended this privilege to confidential communications made to licensed social workers in the course of psychotherapy treatment. 518 U.S. at 25, 116 S.Ct. at 1931.

### Prior Military Case Law

Several military cases have commented, in dicta, on the applicability of a psychotherapist-patient privilege to the military. In a 1993 decision predating *Jaffee*, a unanimous, five-member United States Court of Military Appeals, relying on Mil.R.Evid. 501(d) and the analysis thereto, stated that "[t]here is no physician-patient or psychotherapist-patient privilege in federal law, including military law." *United States v. Mansfield*, 38 M.J. 415, 418 (C.M.A.1993).

In July 1997, this court discussed the psychotherapist-patient privilege in detail and

---

1. Appellant had been granted one month's emergency leave from Bosnia only three months earlier to attend a funeral with his wife in the United States.

2. Appellant was removed temporarily from his unit and placed in a combat stress medical unit. After evaluation and treatment, appellant was returned to his unit for duty.

3. Federal Rule of Evidence 501 provides in pertinent part:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

suggested that *Jaffee* could apply to courts-martial, but did not decide the issue because the matter was waived in that case. *United States v. Demmings*, 46 M.J. 877, 883 (Army Ct.Crim.App.1997).

In September 1997, in a post-*Jaffee* case, the United States Court of Appeals for the Armed Forces stated that the "Manual for Courts–Martial does not recognize a general doctor-patient or psychotherapist-patient privilege." *United States v. English*, 47 M.J. 215, 216–17 (1997). The court cited Mil. R.Evid. 501(d), the contrary *Jaffee* decision, and the President's proposed change to the Military Rules of Evidence incorporating a limited psychotherapist-patient privilege.[4] *English*, 47 M.J. at 216–17 n. 2; *accord United States v. Flack*, 47 M.J. 415, 417 (1998). However, neither *English* nor *Flack* decided whether *Jaffee* applies in courts-martial because the question was not at issue in those cases. Accordingly, we find that this appellant's case presents an issue of first impression in the armed forces.

### Standard of Review

Counsel for both parties argue that our standard of review is abuse of discretion because this case involves a trial judge's ruling admitting evidence. We disagree. In our judgment, the issue of whether *Jaffee* applies in the military is purely a legal question. Accordingly, our standard of review is de novo. *United States v. Padgett*, 48 M.J. 273, 277 (1998); *United States v. Ayala*, 43 M.J. 296, 298 (1995).

### Background

In 1972, the Supreme Court recommended the adoption of nine specific rules of privilege for federal trials, including a psychotherapist-patient privilege. *Jaffee*, 518 U.S. at 13, 116 S.Ct. at 1927 n. 7. Congress considered but rejected the Supreme Court's recommendation because the rules were too controversial. The psychotherapist-patient privilege was one of the most controversial. See STE-

PHEN A. SALTZBURG ET AL., FEDERAL RULES OF EVIDENCE MANUAL 333–34, 416–20, and 1105–30 (4th ed.1986) [hereinafter SALTZBURG, FEDERAL RULES].

While Congress retained for itself the authority to promulgate rules of evidence for trials in federal courts, it expressly granted this authority to the President in Article 36(a), UCMJ, for trials by court-martial:

> Pretrial, trial, and post-trial procedures, *including modes of proof, ...* may be prescribed by the President by regulations which shall, *so far as he considers practicable,* apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter.

(Emphasis added.)

The President used this statutory authority to promulgate the Military Rules of Evidence. The analysis to the Military Rules of Evidence explains the intent of the rules regarding privileges:

> Section V combines the flexible approach taken by Congress with respect to privileges with that provided in the 1969 Manual. Rules 502–509 set forth *specific rules of privilege to provide the certainty and stability necessary for military justice.* Rule 501, on the other hand, adopts those privileges recognized in common law pursuant to Federal Rules (sic) of Evidence 501 *with some limitations.* Specific privileges are generally taken from those proposed Federal Rules of Evidence which although not adopted by Congress *were non-controversial,* or from the 1969 Manual.[5]

Both parties agree that the Military Rules of Evidence do not list a psychotherapist-patient privilege as one of the specifically enumerated privileges recognized in the military. *See* Mil.R.Evid. 502–509.[6] However,

---

4. The proposed Mil.R.Evid. change to incorporate a limited psychotherapist-patient privilege was published in the Federal Register on 6 May 1997, at 62 Fed.Reg. 24,643, and reprinted in *The Army Lawyer* in May 1998, at 22–24.

5. MCM, app. 22, Mil.R.Evid. 501 analysis, at A22–36 (emphasis added).

6. "Section V contains all of the privileges applicable to military criminal law except for those privileges which are found within Rules 301, Privilege Concerning Compulsory Self–Incrimi-

they disagree on two points: (1) whether it is practicable to incorporate the *Jaffee* decision into military practice as part of the federal common law under Mil.R.Evid. 501(a)(4); and, if so, (2) whether a psychotherapist-patient privilege is contrary to or inconsistent with the language of Mil.R.Evid. 501(d) barring a doctor-patient privilege in courts-martial.

### Military Rule of Evidence 501(a)(4)

█ Military Rule of Evidence 501(a)(4) states:

(a) A person may not claim a privilege with respect to any matter except as required by or provided for in:

. . . .

(4) The principles of common law generally recognized in the trial of criminal cases in the United States district courts pursuant to rule 501 of the Federal Rules of Evidence *insofar as the application of such principles* in trials by courts-martial *is practicable* and *not contrary to or inconsistent* with the code, these rules, or this Manual.

(Emphasis added.)

### Practicability

The Supreme Court has historically recognized that "the military is, by necessity, a specialized society separate from civilian society." *Parker v. Levy*, 417 U.S. 733, 743, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). The armed forces of the United States exist to safeguard the Nation's security, and, if necessary, to fight and win the Nation's wars. Military necessity dictates "a respect for duty and a discipline without counterpart in civilian life." *Schlesinger v. Councilman*, 420 U.S. 738, 757, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). Similarly, military law is founded upon these "unique military exigencies." *Id.* "Military law ... is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." *Burns v. Wilson*, 346 U.S. 137, 140, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953).

The Constitution entrusts to Congress the responsibility of balancing the rights of soldiers with military readiness. *Id.* The Congress, in turn, entrusts to the President, as Commander–in–Chief of the armed forces, the responsibility to establish rules of evidence for courts-martial. UCMJ art. 36(a); *cf. United States v. Scheffer*, 523 U.S. 303, ──── n. 2, 118 S.Ct. 1261, 1264 n. 2, 140 L.Ed.2d 413 (1998). The reason is fairly simple: courts-martial, as important as they may be, are incidental to the Army's primary fighting function. "To the extent that those responsible for performance of this primary function are diverted from it by the necessity of trying cases, the basic fighting purpose of armies is not served." *United States ex. rel. Toth v. Quarles*, 350 U.S. 11, 17, 76 S.Ct. 1, 100 L.Ed. 8 (1955).

The analysis to Mil.R.Evid. 501 explains the impracticability of blind application of federal rules of evidence in a military environment.

The Committee deemed the approach taken by Congress in the Federal Rules impracticable within the armed forces. Unlike the Article III court system, which is conducted almost entirely by attorneys functioning in conjunction with permanent courts in fixed locations, the military criminal legal system is characterized by its dependence upon large numbers of laymen, temporary courts, and inherent geographical and personnel instability due to the worldwide deployment of military personnel. Consequently, military law requires far more stability than civilian law. This is particularly true because of the significant number of non-lawyers involved in the military criminal legal system. Commanders, convening authorities, non-lawyers (sic) investigating officers, summary court-martial officers, or law enforcement personnel need specific guidance as to what material is privileged and what is not.[7]

Unlike the general privilege in the Federal Rules of Evidence, the privileges created by

---

nation; Rule 302, Privilege Concerning Mental Examination of an Accused; and Rule 303, Degrading Questions." MCM, app. 22, Mil.R.Evid. 501 analysis, at A22–36.

7. MCM, app. 22, Mil.R.Evid. 501 analysis, at A22–36.

the Military Rules of Evidence have to be understood, interpreted, and applied in various proceedings by non-lawyers. Specifically, non-lawyers regularly apply the military privilege rules in three important areas: (1) Article 32, UCMJ, pretrial investigation hearings; (2) proceedings for search authorizations; and (3) proceedings involving pretrial restraint. Mil.R.Evid. 1101(b) and (d).

The *Jaffee* decision itself leaves the definition of the scope of, and exceptions to, this new privilege for future cases.[8] This approach works well in the federal courts where case-by-case decisions are made by judges after research and argument from counsel on both sides. However, it simply is not practicable, nor is it fair to an accused, to expect non-attorneys to uniformly and accurately apply a general, undefined *Jaffee* privilege in a military environment.

Military privilege law absolutely must accommodate legitimate issues of military necessity. An unrestricted *Jaffee* privilege could endanger the safety and security of military personnel. Commanders deprived of critical mental health information concerning emotionally troubled subordinates could unknowingly jeopardize the lives of their subordinates and the accomplishment of their military missions.

Even the *Jaffee* court recognized that any psychotherapist-patient privilege must yield if a patient poses a serious threat of harm to himself or others.[9] Members of the uniformed services control the firing mechanisms of a vast arsenal of killing devices, including hand held automatic weapons, tanks, artillery, attack aircraft, and cruise missiles. Some of these delivery systems have nuclear munitions. There must be absolutely no question in such an environment that any information obtained from a military patient by a psychotherapist indicating that

such a patient might be dangerous to himself or others is not privileged.

We hold that until the President expressly exercises his authority under Article 36(a), UCMJ, there is no general, unrestricted *Jaffee* privilege in the Army because it is not "practicable" under Mil.R.Evid. 501(a)(4).

### Military Rule of Evidence 501(d)

■ Assuming arguendo that recognizing and applying an unrestricted *Jaffee* psychotherapist-patient privilege is practicable, we hold that the language of Mil.R.Evid. 501(d) bars the application of a *Jaffee* psychotherapist-patient privilege in courts-martial, at least for psychiatrists employed by the armed forces.

Military Rule of Evidence 501(d) provides that "[n]otwithstanding any other provision of these rules, information not otherwise privileged does not become privileged on the basis that it was acquired by a medical officer or civilian physician in a professional capacity." The analysis states that "[r]ule 501(d) prevents the application of a doctor-patient privilege. Such a privilege was considered to be totally incompatible with the clear interest of the armed forces in ensuring the health and fitness for duty of personnel." MCM, app. 22, Mil.R.Evid. 501 analysis, at A22–37.

When interpreting the language of Mil. R.Evid. 501(d), we rely on two points that are not in dispute. First, there is no *doctor-patient* privilege in the military. Second, the President did not intend to incorporate into military law in 1980 the then very controversial *psychotherapist-patient* privilege.

Appellant argues that Mil.R.Evid. 501(d) only precludes application of a doctor-patient privilege, not a psychotherapist-patient privilege. He claims the psychotherapist-patient privilege is completely separate from a doctor-patient privilege. We cannot agree. In

---

8. A rule that authorizes the recognition of new privileges on a case-by-case basis makes it appropriate to define the details of new privileges in a like manner. Because this is the first case in which we have recognized a psychotherapist privilege, it is neither necessary nor feasible to delineate its full contours in a way that would "govern all conceivable future questions in this area."

*Jaffee,* 518 U.S. at 28, 116 S.Ct. at 1932.

9. Although it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist.

*Jaffee,* 518 U.S. at 28, 116 S.Ct. at 1932 n. 19.

our judgment, a psychotherapist-patient privilege is a narrower version of a broader doctor-patient privilege.[10] Dr. Alfano was both a doctor and a psychiatrist. In fact, a "psychiatrist" is defined as "a physician specializing in psychiatry." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1832, UNABRIDGED (1981). Even under a *Jaffee* analysis, appellant's statements to Dr. Alfano are only privileged if appellant made them to Dr. Alfano during diagnosis or treatment. In other words, the physician (Dr. Alfano) must have "acquired" the information "in a professional capacity" (during appellant's diagnosis or treatment). This is precisely what the language in Mil.R.Evid. 501(d) prohibits.

In the alternative, appellant argues that we need not interpret Mil.R.Evid. 501(d) in this case because, by its own terms, it only applies to information "not otherwise privileged."[11] Appellant argues that the *Jaffee* decision is incorporated into military practice as part of the federal common law under Mil.R.Evid. 501(a)(4) and that the psychotherapist-patient privilege is thus "otherwise privileged." Appellant's argument is neither logical nor persuasive. If the Supreme Court issued a new decision recognizing a complete doctor-patient privilege under federal common law, that decision would apply to courts-martial under appellant's argument, notwithstanding Mil.R.Evid. 501(d). Yet, even appellant concedes, that, at a minimum, Mil.R.Evid. 501(d) bars a doctor-patient privilege in courts-martial.

Accordingly, we hold that appellant's assertion that Dr. Alfano's testimony was privileged under *Jaffee* as a common law privilege by operation of Mil.R.Evid. 501(a)(4) is invalid because it is specifically "contrary to [and] inconsistent with" the language of Mil.R.Evid. 501(d). Mil.R.Evid. 501(a)(4).

### Decision

We have considered appellant's remaining assignments of error and the matters asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit. The findings of guilty and the sentence are affirmed.

Senior Judge TOOMEY and Judge NOVAK concur.

---

**10.** Professor Saltzburg notes that the Supreme Court Advisory Committee "rejected the traditional physician-patient privilege (which two-thirds of the states had) and substituted a narrower privilege dealing with psychotherapists." *See* SALTZBURG, FEDERAL RULES at 333.

**11.** If the President does implement a change to the Military Rules of Evidence recognizing a psychotherapist-patient privilege in the military, information obtained under such a change would be "otherwise privileged" within the meaning of Mil.R.Evid. 501(d).